

Court Clerks Copy

RAUL CHRISTIAN LOPEZ-ARROYO

FED. REG. NO.# 14163-196

USP ATWATER

P.O. BOX 019001

ATWATER, CA. 95301.

PRO SE FOR PETITIONER.


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

CV-18-40-TUC-CKJ(PSOT)

IN RE RAUL CHRISTIAN LOPEZ-ARROYO,    )4:08-CR-1126-TUC-CKJ

and HIS BANISHED MINOR CHILDREN, et.al.,)

  PETITIONER(S)-DEFENDANT(S)    )

     VS.           )

UNITED STATES OF AMERICA, ET.AL.,    )

  RESPONDENTS-PLAINTIFFS    )

==============================================================

MEMORANDUM OF LAW IN SUPPORT OF COMBINED MOTIONS TO VACATE ALL THE JUDGMENTS IN RE RAUL CHRISTIAN LOPEZ-ARROYO [4:18-CV-040-TUC-CKJ, 4:08-CR-1126-TUC-CKJ AFTER RECONSIDERATION OF SAME ON NUMEROUS GROUNDS OF COURT ERROR, CLERK ERROR, AND GOVERNMENT [BUREAU OF PRISONS] MISCONDUCT FOR GOOD CAUSE SHOWN

==============================================================


COMES NOW, RAUL CHRISTIAN LOPEZ-ARROYO, pro se, pursuant to Rules 59(e) 60(b)(1-6), (c)(1-3), and (d)(1-3), or in the Alternative, pursuant to 28 USC § 1651 [The All Writ's Act and its correspondent rules] and moves to Vacate all the Court's Final Judgments in the above entitled matter on or about June

18th, 2018, or any other unknown date of previous judgments
entered on the record by the Clerk [purportedly March 16,
2018, seriatim] on the following grounds:

1.)   Petitioner-Defendant did not receive ACTUAL,
FACTUAL AND LEGAL NOTICE of the Court's dismissal of this
matter allegedly occurring on or about March 16, 2018.
Accordingly, the district court's judgment must be set aside
under the Rule of Law announced by the U.S. Supreme Court in
Dusenbery v. U.S., 534 US 161, 151 L.Ed.2d 597, 122 S.Ct. 694
(Jan 8, 2002);  This is so for the reason that the U.S. Bureau
of Prisons and its staff wilfully, intentionally,
deliberately, and unlawfully frustrated the receipt and
delivery of the mail from this court to Petitioner in
violation of his  First, Fourth, Fifth, Sixth, Eighth, Ninth &
Tenth Amendment U.S. Constitutionally guaranteed rights by
impeding Petitioner's receipt of any and all mail from the
Clerk of this Honorable Court--particularly when and where
Rules and Regulations were not followed with respect to the
delivery of Petitioner's Legal Mail from this Honorable Court.
 Because Petitioner did not receive this proper Notice--
because the Bureau of Prisons [hereinafter "BOP"] contends
that the District Court Clerk did not follow the rules and
regulations of Title 28 C.F.R. # [or BOP Policies]--relating
to processing of legal mail by the BOP mailed to federal
inmates through the U.S. Mail from the federal courts--for the
reason that the Clerk of the Court did not personally sign
their name on the envelope making it officially legal as
required by these federal court rules.  As a consequence of
the Clerk's failure to follow the rules, the BOP opened the

2

mail outside the presence of Petitioner Lopez, removed the contents, and delivered whatever it chose to deliver to Petitioner--which did not include the Order from the Court. Petitioner objected and refused to accept the mail demanding that such treatment of his legal mail from the courts be returned to the federal courts with their explanation as to why they were applying their federal rules upon this legal mail sent from the Office of the Clerk in the same regard as applied to private attorneys--when there is no lawful rule that allows the BOP to treat mail from the federal courts in this manner. We accordingly object as to the failure to ever receive proper NOTICE as outlined by Dusenbury, supra, and contend that we are entitled to have all Final Judgments in connection to the Petition for Audita Querela, et.al., seriatim, be vacated, and Petitioner granted an evidentiary hearing--particularly when and where violations of Double Jeopardy, Collection of Excessive Fines and Penalties, and unlawful banishment of United States Citizens demands such result--issues which may not be procedurally defaulted as shown by controlling precedent set forth, herein, and in the 28 USC § 1651 ALL WRITS ACT PETITION FOR AUDITA QUERELA on file with this court. The federal courts have longed recognized that the failure of a litigant to receive ACTUAL AND FACTUAL AND LEGAL NOTICE from the Clerk of a Court requires that a Motion to Vacate the Judgment requires that any and all final judgments require vacation of those judgments. See, John Timothy Cotton v. U.S., 6:00-Cr-60029-1 (W.D.La. (Vacating the Final Judgment imposed by the Court pursuant to 59(e) & 60(b) on grounds that Petitioner did not

3

Receive Actual and Factual Notice of the Order and Judgment of Dismissal).

2.) A Praecipe prepared by Petitioner Lopez-Arroyo was delivered to this court complaining of the Bureau of Prison's gross governmental misconduct impeding the delivery of legal mail to Petitioner from this court after this litigation began. A "Praecipe" or "Precipe" is defined in Black's Law Library as an "Old law writ used to bring a judicial officer before the court's bench to give an explanation as to why they did not do something they were supposed to do as a matter of right and law. This litigation impeded was apparently the March 16th, 2018 Order of this Court dismissing Petitioner's 28 USC § 1651 Petition for the Combined Writs of Audita Querela, seriatim. However, the Praecipe was not resolved by this honorable court in Arizona--but rather--was transferred to the Eastern District of California as a Biven's Action, which Petitioner neither requested or desired. Petitioner OBJECTS and moves to vacate that Order. Indeed, this confusion has been caused by the BOP to the Clerk and Federal Court's detriment--which has caused the unlawful suspension of the Writs of Habeas Corpus and the right to litigate them within the federal courts of Petitioner's choice--that no one is permitted to do or allow. We object and request an evidentiary hearing in accordance with Rule 60(b-d) to resolve these matters relating to the BOP's harassment in the litigation of this matter. Petitioner requests a telephonic hearing, needs a Spanish Language Interpreter and Appointment of Counsel, or assistance of Raymond Lee Clifton, Fed. Reg. No.# 00888-089 as his

[paralegal and expert witness on prison conditions] to assist
him in obtaining justice in these matters.  Clifton has (35)
years experience within the U.S. Bureau of Prisons relating to
prison conditions and testified under oath in the federal
courts as such [qualifies as an "Expert Witness" pursuant to
Rule 702 of the Federal Rules of Evidence] has been an
official and unofficial law clerk in the law libraries of the
BOP for more than 30 years, has been appointed by federal
judges to represent federal prisoners in civil litigation
[conducted bench and jury trials], and has personal knowledge
of the issues in this case--particularly when and where he has
assisted Petitioner in this litigation as his "jailhouse
attorney" for the last three years.  Wherefore, Petitioner
requests a hearing, and objects to this case being dismissed
due to the errors complained of, herein, and elsewhere.

    3.)  Petitioner contends that pursuant to the rules of
the All Writs Act [28 USC 1651], and Article 1, Section 9,
clauses 2 & 3--this court has unlawfully suspended the All
Writs Act abusing its discretion--for the reason that this
court did not follow the Ninth Circuit's precedential
authority as outlined by Noll v. Carlson, 809 F.2d 1446 (9th
Cir. 1987), U.S. v. Morgan, 346 U.S. 502, 510-11, 98 L.Ed.
248, 74 S.Ct. 247 (1954);  Ejelonu v. DHS, INS, 355 F.3D 539,
2004 U.S. APP. Lexis 178 (6th Cir. Jan. 8, 2004)(en banc
dismissed), distinguishing and condemning, Doe v. INS, 120
F.3d 200, 203 N. 4 (9th Cir. 1997).  Wherefore, this matter
should be returned  back to the federal district of Arizona as
improperly dismissed and transferred; this matter, sub judice,
was improperly transferred to THIS federal court from THAT

federal court as a consequence of Arizona Federal Court confusion caused by the illegal and unjust harassment of the U.S. Legal Mail from these federal courts by the U.S. Bureau of Prisons and its mail room administrative staff or others. Indeed, this matter sub judice was never meant to be filed as a Biven's Action pursuant to 28 USC § 1331.  To the contrary, it was filed as Writ of Praecipe for Mandamus/Prohibition/Preliminary Injunctive Relief against the privies of the Respondent United States in connection with another Writ of Mandamus/Prohibition Remedy filed with the U.S. District Court of Arizona pursuant to the All Writ's Act 28 USC § 1651 complaining of an unlawful banishment of America Citizens [minor children] belonging to their parent RAUL CHRISTIAN LOPEZ-ARROYO [HIMSELF AN AMERICAN CITIZEN]--who seeks remedy for their return to their home, native country-- from which they have been banished to Petitioner's prejudice. Thus, the latter remedy [also filed pursuant to 28 USC § 1651] sought to prohibit harassment of Petitioner's legal mail which was frustrating the remedy sought by the former process. Moreover, the clerk of this court requested filing fees in this court against Petitioner, when and where there are no filing fees in 28 USC 1651 cases.  See, Naddi v. Hill, 106 F.3d 275, 277 (9th Cir. 1997), cases cited, therein.

Accordingly, it is humbly requested that this matter be returned to the federal district court of Arizona as a 28 USC § 1651 for remedy as originally intended.

An equally identical and corresponding Notice and Motion has been contemporaneously filed with the Federal District Court in the Eastern District of California,

6

collaterally.

4.)  Petitioner now objects to this Arizona Court's
actions in this regard on grounds he was never given an
opportunity to object to this action because the Bureau of
Prisons frustrated the delivery and receipt of the court's
actions, once again.  Petitioner intended to have this matter
filed as a remedy of Praecipe with the Federal District of
Arizona against the privies of the Respondent-Plaintiff United
States who were obstructing and impeding the litigation and
Remedies for Audita Querela, Mandamus, and Prohibition relief
filed under The All Writ's Act [28 USC § 1651] in relation to
the UNLAWFUL BANISHMENT OF PETITIONER'S CHILDREN [ALL AMERICAN
CITIZENS] FROM THE UNITED STATES TO MEXICO--without
Petitioner's consent.

5.)  Petitioner's Petition for Audita Querela et.
alli, stated a valid claim for relief.  Allegations in
pleadings must be taken as true.  See, Cooper v. Pate, 378
U.S. 546, 12 L.Ed.2d 1030, 84 S.Ct. 1733 (1964);  Boag v.
MacDougall, 454 U.S. 364, 70 L.Ed.2d 551, 102 S.Ct. 700
(1982);  Haines v. Kerner, 404 U.S. 519, 30 L.Ed.2d 652, 92
S.Ct. 594 (1972);  Farmer v. Brennan, 511 U.S. at ____, 128
L.Ed.2d 811 (1994).  Petitioner was, and is, entitled to an
Evidentiary Hearing and appointment of counsel with an
interpreter in this matter.

6.)  Petitioner's Petition for Audita Querela stated
that an administrative penalty had been imposed and executed
upon him by the banishment of his family under the pretext of
lawful deportation]--which amounted to a penalty upon
Petitioner in preventing him from ever seeing his family in

7

the United States again. Indeed, Petitioner suffered both
mentally and physically and financially as a consequence of
their unjust banishment--particularly when and where the U.S.
Government had no lawful right to banish minor children who
were born in the United States and American Citizens. For
the reason that Petitioner's minor children are no longer in
custody, are no longer in the United States, and this
constitutes unlawful fines and penalties and equity--not to
mention the unlawful imposition of special assessments against
him--as well as forfeiture--Petitioner is entitled to his
"Audita Querela, Coram Nobis/Vobis, and may litigate in behalf
of not only himself--but his minor children as well. See,
U.S. v. Gilbert, 807 F.3d 1197, 1201-end and [at 1], citing
with approval and reaffirming, U.S. v. Thiele, 314 F.3d 399,
401 (9th Cir. 2002), citing, U.S. v. Kramer, 195 F.3d 1129,
1130 (9th Cir. 1999); Sanchez, et. al., v. U.S., 1999 U.S.
App. LEXIS 30079 [98-16973] (Nov. 16, 1999); Tennison, et.
al., 144 F.3d 1285, 1998 U.S. App. LEXIS 11958 (JUNE 9, 1998).
Moreover, the new rule of law set forth in Sessions v. Dimaya,
herein, clearly requires this Honorable Court to review the
newly established Double Jeopardy claims suffered by
Petitioner, heretofore. Petitioner seeks restoration of
forfeiture proceeds taken from him after the banishment of his
America family. Petitioner was denied his Fifth & Sixth
Amendment Rights to litigate in their behalf--because minor
children cannot litigate in their own behalf. Accordingly,
Petitioner's prosecution for his drug offenses were barred by
the Doctrine of Double Jeopardy in light of the new rule of
law set forth in Dimaya v. Lynch, 803 F.3d 110 (9th Cir. Oct.

19, 2015), affirmed sub nom, SESSIONS v DIMAYA, 584 U.S. ___,
138 S.Ct. 1204, 200 L.Ed.2d 549 (2018)--which precludes the
federal government from violating Double Jeopardy through
administrative law and criminal law--stemming from the same
events; see also, U.S. v. Perdomo, 661 Fed. Appx. 823, (5th
Cir. Sept. 15, 2016), vacated in light of Sessions (S.Ct. May
14, 2018);  Winters v. U.S., 17-1104 (S.Ct. May 14, 2018),
vacating 691 Fed. Appx. 286 (8th Cir. June 20, 2017);  Enix v.
U.S., 2017 U.S. App. LEXIS 21700 (11TH CIR. FLA. JUNE 12,
2017);  U.S. v. ANTWON JENKINS, 17-97 (S.Ct. May 14, 2018)
vacating, 849 F.3d 390 (7TH CIR. ILL. FEB. 24, 2017)(SAME);
McCoy v. U.S., 17-5484 (S.Ct. May 14, 2018), vacating 2017
U.S. App. LEXIS 8237 (8TH CIR. N.D. MAY 5, 2017)(SAME);  XING
LIN, 17-6065 (S.CT. MAY 14, 2018), vacating, 683 F.3d Appx. 41
(2nd Cir. N.Y. Mar. 20, 2017)(same);  Eizember v. U.S., 2018
U.S. LEXIS 3038 (MAY 14, 2018), vacating 2017 U.S.App. LEXIS
16965 (8TH CIR. ARK. JUNE 27, 2017)(SAME);  TAYLOR V. U.S.,
2018 U.S. LEXIS 2908 (S.CT.) VACATING, 2017 U.S. APP. lexis
27853 (8TH CIR. MO. Fegb. 28, 2017);  Thus, IN LIGHT OF
EJELONU and MORGAN, supra, this court had jurisdiction to
grant Petitioner relief pursuant to 28 USC 1651.  See, Brown
v. Holder, 763 F.3d 1141, 1152 (9th Cir. 2014)(recognizing an
equitable remedy to estop the federal government from holding
that certain minor children were not American citizens),
citing, Montana v. Kennedy, 366 U.S. 308, 314-15, 81 S.Ct.
1336, 6 L.Ed.2d 313 (1961); Trinidad v. Garcia Thomas, 683
F.3d 952 (9th Cir. June 23rd, 2011)(Supreme Court cases cited,
therein);  Sessions v. Dimaya, supra, clearly entitled
Petitioner to equitable relief in light of the new rule of law

9

explaining "Double Jeopardy" against administrative judgments.
Petitioner is entitled to an evidentiary hearing to determine
to develope the facts of the unlawful banishment of his Americ
an Children and whether Double Jeopardy requires Petitioner's
release.  See, Fed. Rules 60 (b)(6),  (c)(1-3),(d)(1)-(3)--
juxtaposed with 28 USC §§ 1651 PETITIONS UNLAWFULLY DISMISSED
IN LIGHT OF NOLL V. CARLSON, supra.

U.S. v. Thiele, supra, makes it clear that only 28 USC
§ 1651 may be used to challenge the imposition and execution
of fines, forfeiture, banishment, restitution--bacause they do
not include a custody requirements-even if Petitioner is
challenging other issues relating to his imprisonment.  Thus,
Petitioner cannot be left without a remedy--particularly when
controlling precedent makes it clear that 2241 and 2255
remedies are inadequate and ineffective to challenge the
issues that Petitioner now raises.  If the court is not
convinced by this argument, perhaps it will be so conviced,
based upon the History of the All Writs Act which we provide
that follows:

I.       THE COMMON LAW WRIT OF AUDITA Querela

The History Of The Common Law Writ:

It is without doubt that the best opinion ever
rendered relating to the history of the Common Law Writ of
Audita Querela has been given in Ejelonu v. DHS, INS, 355 F3d
539, 544-End (6th Cir. 2003); the Sixth Circuit stated:

"The Common Law Writ of Audita Querela is a remedy
granted in favor of one against whom Execution has issued or
is about to issue on a Judgment--The Enforcement of which
would be Contrary to Justice, either because of matters
arising subsequent to its Rendition, or because or prior
existing defenses that were not available to the Judgment
Debtor in the original action because of the Judgment
Creditor's "fraudulent conduct" or through circumstances over
which the Judgment Debtor had no control", citing, 7 AmJur.2d,
Audita Querela § 1, at 432 (1997). The Sixth Circuit noted
that the Writs of Audita Querela and Coram Nobis are similar,
but legally distinct. As one Court explained: ...We see but
little distinction between the Writ of Coram Nobis and that of
Audita Querela. `The technical distinction´ is that Coram
Nobis attacks the Judgment itself, whereas Audita Querela may
be directed against the Enforcement, or further Enforcement,
of a Judgment which when rendered was just and unimpeachable."
Blasley v. Commonwealth, 428 S.W.2d 614, 616 (KY.
1967)(quoting Robertson v. Commonwealth, 279 Ky. 762, 132
S.W.2d 69, 71 (1939), overruled on other grounds, Commonwealth
v. Hale, 96 S.W.3d 24 (KY. 2003). "put differently, Coram

//

Nobis attacks the Judgment itself, whereas Audita Querela
attacks the consequences of the Judgment."

"Although the Writ of Audita Querela is rarely used,
courts have issued the Writ in Immigration cases similar to
the one in Ejelonu.  See, e.g., United States v. Khalaf, 116
F.Supp.2d 210, 217 (D. Mass. 1999); U.S. v. Salgado, 692
F.Supp. 1265, 1269 (E.D.Wa. 1988);  U.S. v. Grebreziabher, 701
F.Supp. 115, 117 (E.D.La. 1988); U.S. v. Haro, Cr No 85-00612
WJR (C.D. CAL. MAY 30, 1990)(UNPUBLISHED ORDER);  U.S. V.
LOUDER, CR. NO. 82-1084 (WWE)(D. CONN. May 1,
1999)(unpublished order); see also, 105 ALR Fed. 880, George
C. Sarno--Availability and Appropriateness of Audita Querela
Relief in connection With Immigration and Naturalization
Proceedings (1991).  Ejelonu, supra, at 544.
especially see, however, Holland v. U.S., 380 F.Supp.2d 1264
(July 8th & 26, 2005)(William M Acker, J.) supra.

SURVIVABILITY OF THE COMMON LAW WRIT OF AUDITA QUERELA:

From the outset, The Sixth Circuit in Ejelonu noted
that the Writ of Audita Querela survives in certain instances
despite the 1946 Amendments to the Federal Rules of Civil
Procedure, which partly abolished several common law writs
including Coram Nobis and Audita Querela in "civil cases".
Despite the 1946 Amendments, however, the Supreme Court held
in U.S. v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248
(1954) that courts till have authority to issue Writs of Coram
Nobis in collateral criminal proceedings.  346 U.S. at 506-
510.  The Morgan Court initially noted that Rule 60B) governs

only "civil Proceedings".  Id. at 505 n. 4.  The Supreme Court
also expressly rejected the argument that the federal Habeas
Statute, 28 USC 2255, HAD THE EFFECT OF ABOLISHING COMMON LAW
WRITS IN CRIMINAL PROCEEDINGS.  ID. AT 511 (EMPHASIS ADDED,
OURS).  According to the D.C. Circuit, "the teaching of Morgan
is that federal courts may properly fill the interstices of
the federal post-conviction remedial framework through
remedies available at common law.  U.S. v. Ayala, 282
U.S.App.D.C. 266, 894 F.2d 425, 428 (D.C. Cir. 1990).  For
this reason, despite their seemingly anachronistic qualities,
federal courts till have the authority to grant Writs of
Audita Querela, generally, pursuant to the All Writs Act, 28
USC 1651.  SEE DOE V. ins, 120 F.2d 200, 203 (9th Cir. 1997);
United States v. Johnson, 962 F.2d 579, 583 (7th Cir.
1992)(same); Richter v. U.S., 510 F.3d 100 (2nd Cir. 2010);
Kessack v. U.S., No. CV-05-1828-TSZ, 2008 U.S. Dist. LEXIS
77339, 2008 WL 18679 (W.D. Wash.  Jan. 18, 2008);  but see,
U.S. v. Garcia-Hernandez, 755 F.Supp. 232 (N.D.Ill. Jan. 29,
1991), citing, U.S. v. Kimberlin, 675 F.2d 866, 969 (7th Cir.
1982)(Interpreting "Audita Querela" holding, "it appears to be
primarily a remedy of Judgment Debtors.")[citations omitted;
U.S. v. Johnson, 773 F.2d 114 (N.D.Ill. Sept. 25,
1991)(Defining "Equity", citing Kimberlin and Garcia-
Hernandez, supra;--applying the same view, supra;  U.S. v.
Reyes, 945 F.2d 862, 866 (5th Cir. 1991); U.S. v. Holder, 936
F.2d 1, 3 (1991); Ayala, *94 F.2d at 428.


THE STRUGGLE TO DEFINE THE SCOPE OF THE WRIT OF AUDITA
QUERELA:

As an infrequently used remedy, modern courts have struggled to define the scope of the writ.  In fact, Advisory Committee Notes to Fed. Rules of Civil Procedure 60(b) describe common law writs like Audita Querela as "shrouded in ancient lore and mystery."  The Tenth Circuit has explained:

"According to its ancient precepts, the Writ of Audita Querela was invented to afford relief in behalf of one against whom execution had been issued or was about to be issued upon a judgment, WHICH WOULD BE CONTRARY TO JUSTICE TO ALLOW IT TO BE ENFORCED, BECAUSE OF MATTERS ARISING SUBSEQUENT TO THE RENDITION THEREOF.  Oliver v. City of Shattuck ex rel Versluis, 157 F.2d 150, 153 (10th Cir. 1946)(collecting cases)--but this opinion was overruled, in part, on other grounds [which had ruled that Audita Querela was no longer available]--by U.S. Supreme Court in U.S. v. Morgan, supra. See also the recent 10th Circuit decision in U.S. v. London, 523 Fed. Appx. 510 [footnote 2] (July 29, 2013)("...a writ of audita querela would likely not be the appropriate writ, as it is only available for "unanticipated situations that arise after judgment."), citing Rawlins v. Kansas, 714 F.3d 1189, 1196 (10th Cir. 2013). "A writ of Coram Nobis is the appropriate writ when a petitioner seeks to challenge "defects that existed before the judgment."  Id.

Other Sister Circuits to have considered the issue have held that a writ of Audita Querela cannot provide purely equitable relief, BUT CAN ONLY ISSUE WHEN THE PETITIONER CAN DEMONSTRATE A LEGAL DEFECT IN THE UNDERLYING PROCEEDINGS. See, e.g. Does, at 203-04;  U.S. v. LaPlante, 57 F.3d 252, 253

14

(2nd Cir. 1995);  Johnson, 962 F.2d at 582;  Holder, 936 F.2d
at 5;  Reyes, 945 F.2d at 866."  (Emphasis added, ours).

    The Ejelonu Court found that none of these cases
provide much independent analysis; rather, these opinions
invariably base their conclusions on the D.C. Circuit's
decision in United States v. Ayala, 282 U.S. App. D.C. 266,
894 F.2d 425.  See, E.G., HOLDER, 926 F.2d at 3 "(We agree
with the D.C. Circuit Court of Appeals that The Writ of Audita
Querela does not, and cannot, under any stretch of the
imagination, provide a purely equitable basis for relief
independent of any legal defect in the underlying judgment.")
As the Ninth Circuit explained in the most recent opinion
analyzing the issue, "The District of Columbia Circuit was
first to explain why [courts granting Audita Querela relief
based on purely equitable grounds] were mistaken, as a
historical matter, in their conclusion that Audita Querela
furnishes a purely [equitable basis] for relief independent of
any legal defect in the underlying judgment."  However, The
Sixth Circuit recognized, Ayala's rationale had to be
revisited and warranted further consideration.  In doing so
the Ejelonu Court found:

    "Ayala never mentions the definition of Audita Querela
provided in Oliver, 157 F.2d at 153.  See Ayala, 894 F.2d at
425.  The D.C. Circuit cites Humphreys v. Leggett, 50 U.S. (9
How.) 297, 314, 13 L.Ed. 145 (1850), for its sweeping
conclusion that "because the so-called {Pure Equity} variant
of Audita Querela finds no support in the historical
definition of the writ, the authority of the federal courts to
use it as an [equitable] {gap filler} under the All Writs Act

is open to serious doubt." Ayala, 894 F.2d at 429 [n. 6].
However, the Sixth Circuit held that Humphreys was not
particularly helpful to Ayala's conclusion. According to
Humphrey's a Writ of Audita Querela is:

"A writ, it is said, of a most remedial nature, and
invested lest in any case there should be an oppressive defect
of justice, where a party who has a good defense is too late
in making it in the ordinary forms of law; and although it is
said to be in its nature a Bill in Equity, yet, in modern
practice, courts of law usually afford the same remedy on
motion in a summary way. The practice in Mississippi seems to
prefer a Bill in Equity for the same purposes. And Courts of
Equity usually grant a remedy by injunction against a judgment
at law, upon the same principles." In Truly v. Wanzer, 46
U.S. 141, 12 L.Ed. 88, 5 Howard, 142, this court said [sic]--
"it may be stated as a general principle with regard to
injunctions after a judgment at law, that any fact which
proves it to be against conscience to execute such judgment,
and of which the party could not have availed himself in a
court of law, or of which he might have availed himself at
law, but was prevented by fraud or accident, unmixed with any
fault or negligence in himself or his agents, will authorize a
Court of Equity to interfere by injunction [Writ of Audita
Querela] to restrain the adverse party from availing himself
of such judgment.' (See also Story, Eq. Jur. § 887.)
Humphreys, 50 U.S. (9 How.) at 313 (emphasis added). Thus,
according to the Supreme Court, "it may be stated as a general
principle with regard to injunctions after a judgment at law,
that any fact which proves it to be against conscience to

*16*

execute such judgment, and of which the party could not have availed himself in a court of law--is entitled to the Writ of Audita Querela--which is an Injunction." Id. (quotations omitted).'" Although the Humphrey's Court granted relief because the Petitioner was "in the same condition as if the defense had arisen after judgment, which would entitle him to relief by Audita Querela," the Humphrey's Court NEVER HELD THAT A NEW LEGAL DEFENSE AGAINST AN OLD JUDGMENT WAS THE ONLY BASIS FOR AUDITA QUERELA RELIEF. In fact, the Court made clear that a Petitioner may receive a Writ of Audita Querela when the Petitioner can show that some fact that "proves it to be against the conscience to execute such [a} judgment," and which the party could not have previously raised. Humphreys, 50 U.S. (9 How.) at 313. Apparently, the only modern academic to conduct thorough historical research into Audita Querela's common law origins, Professor Robbins, found Ayala "flawed" because "requiring that there be a legal objection to the conviction deviates from the common-law use of the Writ." See Ira P. Robbins, The Revitalization of the Common-Law Civil Writ of Audita Querela as a Post Conviction Remedy in Criminal Cases: The Immigration Context and Beyond, 6 Geo Immigr. L.J. 643, 681-82 (Dec. 1992).

The Sixth Circuit also rejected the dramatically narrow historical analysis upon which Ayala and its progeny depended. Ejelonu 355 F.3d at 547. The Sixth Circuit found that "Early scholarly commentary on Audita Querela strongly indicates the Writ's equitable nature." Historian William Holdsworth argued that History of English in 1 William Holdsworth Law 224 (3rd Ed. 1922) [Writs of Audita Querela]

*17*

when Holdsworth cited Judge Stonor of King Edward III's reign, who stated, "I tell you plainly that "Audita Querela is given rather by Equity than by Common Law, for quite recently there was no such suit. "  See, 2 William S. Holdsworth, A History of English Law 593 (1922).  Significantly, Holdsworth also relied upon Blackstone's Commentaries, which described Audita Querela as "in the nature of a Bill of Equity, to be relieved against the oppression of the plaintiff."  1 Holdsworth, supra, at 224 (citing 3 William Blackstone, Commentaries on the Laws of England 406 (William D. Lewis Ed. 1900).  According to Holdsworth, the development of Audita Querela demonstrates that lawyers at the time "were not indifferent to the claims of abstract justice."  2 Holdsworth, supra, at 593.  Thus, Holdsworth "argued that Audita Querela was a method used to provide relief when the equities suggested it should be granted.  Robins, supra, at 650.

Early state cases support the Tenth Circuit's position, and what Ayala terms the "Pure Equity" approach to Audita Querela better reflects The Writ's Common Law origins. As a general matter, these early decisions rely on Blackstone, whom Holdsworth used to conclude that Audita Querela is of essentially equitable character."  1. Holdsworth, supra at 224.  See, E.G. Boynton v. Boynton, 186 Mo.App. 713, 172 S.W. 1175, 1177 (Mo. Ct. App. 1914)("The writ of Audita Querela lies `in the nature of a Bill in Equity.´") [quoting Blackstone, supra, at 406];  Lovejoy v. Webber, 10 Mass. 101, 103 (1813)("The remedy is said to be in the nature of a Bill of Equity.") [quoting Blackstone, supra, at 406].  In language similar to the Tenth Circuit's definition, the Massachusetts

Supreme Court wrote that Audita Querela is a proceeding "where the defendant in the original suit will be unjustly deprived of his rights, if the judgment or execution. . .is allowed to be treated as valid."  Coffin v. Ewer, 46 Mass. 228, 230-31, 5 Metc. 228 (1842).  Likewise, the Missouri Court of Appeals explained that Audita Querela is "founded upon some matter of Equity, or fraud, or release, or something of like nature, which transpired since the rendition of the judgment, and which would render its enforcement inequitable and unjust." Ejelonu, supra at 548, quoting State v. Hall, 322 Mo. 1118, 17 S.W.2d 935, 937 (Mo. Ct. App.  1928).  Most recently, a federal district court in California defined audita Querela as a writ "used to vacate a judgment upon showing that events occurring after the entry of the judgment causes the continued existence of the judgment to be contrary to the interests of justice."  Haro, CR No. 85-00612 WJR, at 3.

As the aforementioned authority establishes, the Ayala court was incorrect when it concluded that the "Pure Equity variant of Audita Querela finds no support in the historical definition of The Writ."  894 F.2d at 429.  Ayala relies on Humphreys, but Humphreys supports the idea that courts may issue the writ when it "proves to be against conscience to execute [a] judgment." Humphreys, 50, U.S. (9 How.) at 313. NOTHING in HUMPHREYS requires courts to find a legal error in the original judgment.  Worse, Ayala contends that the "Pure Equity" variant of Audita Querela finds no support in the historical definition of The Writ," 894 F.2d at 429, without acknowledging the Tenth Circuit's decision in Oliver, which collected a series of relevant cases and held that "according

*19*

to its ancient precepts, The Writ of Audita Querela was invented to afford relief in behalf of one against whom execution had been issued. . .which it would be contrary to justice to allow to be enforced, because of matters arising subsequent to the rendition thereof.  Oliver, 157 F.2d at 153 (emphasis added.  The Sixth Circuit in Ejelonu adopted the conclusion of the Tenth Circuit, Blackstone, the imminent historian Holdsworth, and Professor Robbins, and therefore found that they could mitigate a judgment's collateral consequences through a Writ of Audita Querela issued for Equitable reasons, regardless of the presence of a legal defect in the original proceeding.

RECENT HISTORICAL RULINGS ON AUDITA QUERELA.

Consistent with this decision [The Sixth Circuit found] that several courts have granted Writs of Audita Querela to mitigate the collateral consequences of an earlier criminal conviction when failing to do so would have produced an unconscionable result.  In Salgado, supra, for instance, the petitioner received a Writ of Audita Querela to stop his deportation based on a twenty-four-year-old guilty plea to a marijuana offense.  Id. at 1266.  Salgado originally immigrated in 1939.  Following his conviction, Salgado voluntarily left the country for five years, reentered in 1969, and lived as a productive member of society for the decades following his conviction.  Id.  When he applied for Social Security benefits in 1984, the INS DISCOVERED IT SHOULD HAVE DEPORTED HIM.  Id. Salgado argued that he received ineffective assistance of counsel in the original 1964

proceeding because his lawyer did not inform him of the
immigration consequences of his guilty plea.  Id at 1267.  The
Court, however, rejected this contention along with several
other legal arguments, and found no legal error had occurred.
Instead, the court noted that:

"Considering that no single [legal factor] of those
arrayed above would warrant granting [The Writ of Audita
Querela], the court is left with the unmistakable impression
that under the totality of the circumstances, it would be a
gross injustice to allow this man, who has by all accounts
been a model resident for forty-five years save for a single
period of unlawful conduct, to effectively serve a life
sentence, and for his family to be deprived of benefits from a
fund he has paid into throughout his life."  Id. at 1268.  The
court also recognized a potential objection:

"There may be those with a more callous view of life
who might conclude that Mr. Salgado has nothing to complain
about.  It is undisputed that he committed the crime charged,
and he paid the reasonable foreseeable penalty of deportation.
Some might say that his continuing enjoyment of life in the
United States between 1969 and the present was a serendipitous
happenstance which accrued to his benefit and which created no
cognizable expectation of entitlement to remain indefinitely.
The Court cannot subscribe to such a hardened approach.  Id.
at 1271.  For these purely equitable reasons, the Salgado
court issued a Writ of Audita Querela on the Petitioner's
behalf." Id.

In United States v. Ghebreziabher, 701 F.Supp. 115

(E.D La. 1988) a court granted Audita Querela relief for
similar reasons. In that case, the Petitioner was an Ethiopian
native who entered the United States in 1979.  Id at 166.  He
initially worked in a shipyard before starting his own
successful business and purchasing a home.  Id.  He also
married and had four children.  Id.  In 1987, however, he
pleaded guilty to three misdemeanor counts of food stamp
trafficking.  Id.  Ghebrieziabher had accepted food stamps in
exchange for $220 worth of merchandise without authorization.
Id.  He received probation and had to repay the $220.  Despite
the government's arguments in support of Ghebreziabhers
deportation, the court relied on various equitable
considerations to reach a different outcome:

"Mr. Ghebreziabher has been an industrious member of
this community for almost ten years.  He has four United
States Citizen children who will be deprived of his support if
he should be deported.  He has realized the American Dream, Ow
ning his Own Home, and has reduced the mortgage on it from
$58,500.00 to $33,000.00 in approximately 6 years.  Except for
these three incidents, he has no convictions.  His former
employer, a subsidiary of a shipyard where he worked as a
carpenter and joiner, thought well of him and found him to be
hard-working.  The political climate of Ethiopia is a another
consideration.  The State Department has designated Ethiopia
as a country of voluntary departure since 1982 due to internal
strife.  Since the defendant had to escape from the country
initially, his future there appears to be foreboding.  It is
also likely that his family will suffer tremendously should he
be deported and removed from the home.  Id. at 117.  On this

basis, the court found it "in the interests of justice" to
issue a Writ of Audita Querela.  Id. Salgado and Ghebreziabher
help further establish Audita Querela's Equitable character
and its utility in immigration proceedings."

The Sixth Circuit had no trouble concluding that the
Equities in those cases overwhelmingly favored and supported
Petitioner Ejelonu--not just to the point where a reasonable
person might sympathize with her plight, but to the extent
that to deport her under such circumstances would shock the
conscience.

First, Ejelonu would have been a United States Citizen
if the INS had acted in a timely fashion, which would have
rendered her undeportable regardless of her Youthful Trainee
Status.  Petitioner's mother filed the necessary paperwork on
time, and Petitioner met the statutory criteria for
citizenship.  Had the INS not waited a year to interview
Petitioner, Petitioner would have become a citizen and
Ejelonu's deportation proceedings would not have occurred.
The government's conduct is sine qua non of Petitioner
Ejelonu's current predicament.

Secondly, Congress had passed New Legislation,
establishing that the United States would no longer deport
minor individuals for minor youthful infractions when the
individual should have received citizenship.  See, CCA, 8 USC
1431.  When considering the CCA, Representative Lamar Smith
recognized the precise bureaucratic problem that deprived
Petitioner Ejelonu of her citizenship.  Smith explained:

"In cases involving children who are approaching their
18th birthday, the delay could result in some children losing

the opportunity to acquire citizenship under provisions of the law." Ejelonu, at 550, quoting, Statement of Rep. Lamar Smith, Chairman of the House Subcommittee on Immigration and Claims," and Anti-Atrocity Alien Deportation Act," Hearing Before the Subcommittee on Immigration and Claims of the Committee on the Judiciary, 106th Cong. 1st Sess. (Feb. 17, 2000), at 2. For whatever reason, the INS vehemently opposed this legislation. However, Congress ignored the INS. AS CONGRESSMAN SAM GEJDENSON explained during the debate over the CCA:

"There are tragic cases where children of U.S. Parents never naturalized because of inadvertence, are facing deportation because of a crime they have committed. While these children must face their punishment, to deport them to countries with which they have no contact. . .is needlessly cruel."

Ejelonu, supra at 551, quoting 146 Cong. Rec. H7774, H7778 (Sept. 19, 2000). Representative Bill Delahunt agreed:

"No One condones criminal acts. . .but the terrible price these young people and their families have paid is out of proportion to their misdeeds."

See, 146 Cong. Rec. H7774, H7777 (Sept. 19, 2000). Moreover, as the Sixth Circuit stated in Ejelonu, also:

"To whatever extent DHS feels it has an obligation to carry out Congressional policy embodied in old immigration law, Congress has changed the rules so that juvenile offenders in Petitioner's position no longer face Draconian consequences because the INS unreasonably delayed

processing a citizenship request.  DHS now (in 2003) seeks to
perpetuate a problem Congress acted to eliminate in 2000."

INEFFECTIVE ASSISTANCE OF COUNSEL:

The Ejelonu Court recognized that Ejelonu's counsel
never informed her that accepting Youthful Trainees status
would have serious immigration consequences.  They reasoned
that:

"Counsel should always make clients aware of any
possible serious collateral consequences to a judgment.  Had
Petitioner known that acquiescing to Youthful Trainees status
would make her deportable, it seems likely she would have
pleaded not guilty and fought the charges.  Michigan law does
not have a mandatory minimum penalty for violating M.C.L. §
750.174; if found guilty, Petitioner could have received
anything from probation to a five-year sentence.  see, M.C.L.
§ 750.174(4).  Since DHS equates Youthful Trainees status with
a conviction, Petitioner had nothing to lose by proceeding to
trial.  Inadequately informed by her counsel, however,
Petitioner accepted Youthful Trainee status rather than try
her case, and thus traded the possibility of deportation for
the certainty of deportation."

The Failure of an Attorney to inform his client of the
relevant law clearly satisfies the first prong of Strickland
analysis.  Hill v. Lockhart, 474 U.S. 52, 62, 106 S.Ct. 366,
372, 88 L.Ed.2d 203 (1985).  There is a reasonable probability
that, but for counsel's un-professional errors, the result of
the proceeding would have been different.  Strickland, 466

U.S. at 694. "The reasonable probability standard requires a substantial--not just a conceivable--likelihood of a different result." Harrington v. Richter, 131 S.Ct. 770, 791, 178 L.Ed.2d 624 (2011); Murphy v. U.S., 2014 U.S. Dist. LEXIS 53675 (D.C. April 17, 2014), citing Massaro v. U.S.,

It should be noted here that Padilla v. Kentucky, 559 U.S. ___, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) and Carachuri-Rosendo v. Holder, 560 U.S. ___, 130 S.Ct. 2577, 177 L.Ed.2d 68 (2010) would reverse Ejelonu here on the ineffective assistance of counsel issue--but affirm the decision on the Mandatory and Minimum issue [discussed in Ejelonu], in light of Alleyne v. United States,   at 570 U.S. ___, 133 S.Ct. ___, 186 L.Ed.2d 314, 2013 U.S. LEXIS 4543 (June 17, 2013) and KESSACK, supra; see also, Holland v. U.S., 380 F.Supp.2d 1264 (July 26, 2005)(William M Acker, J.)(specifically explaining why counsel was ineffective for failing to argue challenges to restitution in that case, supra). Nevertheless, Ejelonu held that: "equity demands a writ of Audita Querela to avoid a punishment grossly disproportionate to the offense." In so holding, the Sixth Circuit held that the INS, DHS position would effectively convert Ejelonu's sentence "into a life sentence"--because Ejelonu's family [now citizens] would be left behind in America when she was returned to Nigeria--an under-developed, impoverished country. Petitioner had no relatives remaining in Nigeria--and there was no evidence that Petitioner could speak the languages of the country. Apparently, [the Sixth Circuit noticed] IHS would simply put Petitioner on a plane to Abuja, Nigeria and congratulate itself. DHS would condemn

26

Petitioner "to a life of penury, or worse. . .".

In concluding, the Sixth Circuit citing Oliver, 157 F.2d at 153, supra, held that: "AUDITA QUERELA IS APPROPRIATE BECAUSE IT WOULD BE `CONTRARY TO JUSTICE', TO ALLOW THE COLLATERAL CONSEQUENCES OF PETITIONER'S YOUTHFUL TRAINEE STATUS TO JUSTIFY HER DEPORTATION."

Under Ejelonu's holding, the Sixth Circuit made it clear that under the law of Audita Querela they were not vacating the previous "state court judgments--relating to validity of her conviction or the duration of her state sentence--because habeas corpus was the sole remedy for that." However, the Sixth Circuit WAS vacating the collateral consequences of criminal convictions of the judgment. Id at 552.

The Sixth Circuit granted The government's Petition for Rehearing En Banc, and vacated the Sixth Circuit panel's earlier Ejelonu decision and stayed the mandate. Ejelonu v. INS, 2004 U.S. App. LEXIS 178 (6th Cir. July 8th & 27, 2004). However, the government wisely withdrew its Petition for Rehearing En Banc and the appeal was dismissed on 10/18/2004. Id. Thus, Ejelonu's interpretation of Audita Querela is still the best historical analysis ever made.

Other courts have granted Audita Querela relief with respect to both Drug and Gun Crimes. See, Kessack v. U.S., 2008 U.S. Dist. LEXIS 7739, 2008 WL 189679 (W.D.Wash)(Granting Audita Querela Relief in a Federal Drug Conspiracy Case); IN RE NWANZE, 242 F.3d 521 524 (3rd Cir. 2001)(Recognizing Third Circuit Jurisdiction to issue a Writ of Mandamus, Audita Querela, or Coram Vobis/Nobis pursuant to 28 USC § 1651 as to

an 18 USC § 924(c)(1) sentence--if and when another Federal
Circuit Court having previous jurisdiction over the matter in
question upon transfer thereto pursuant to 28 USC § 1404 did
not grant Petitioner sentencing relief--in light of Bailey v.
United States, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472
(1995)(holding that "a defendant could not be convicted of
using a firearm under section 924(c) unless the government
proved that the defendant actively employed the firearm during
and in relation to a predicate crime".).  The Third Circuit in
the Nwanze case clearly recognized the reasons why both the 28
USC §§ 2241 and 2255 Remedies would be inadequate and
ineffective to test the legality of Petitioner's sentence.
Nevertheless, the Third Circuit recognized their
jurisdictional authority to grant such Mandamus or other
Extraordinary Relief under 28 USC § 1651 if the Eastern
District of Virginia did not correct the sentence upon
transfer there [Coram Vobis]--by dismissing the matter WITHOUT
PREJUDICE.  ID. at 527-528.  See also, Maysonet v. O'Brien,
2013 U.S. Dist. LEXIS 132846 (W.D.Va. June 12,
2013)(Recognizing its 28 USC § 1651 to apply 28 USC 1404 [The
Nwanze Rule] to transfer a 28 USC § 2241 Petition to the
Middle District of Florida for determination of illegal
sentencing under 18 USC 922(g)(1) & 924(e)(1) in light of the
new U.S. v. Begay and Carachuri-Rosendo v. Holder decisions);
U.S. v. Pickett, 2011 U.S. Dist. LEXIS 141993 (D.C.N.C. Dec.
9, 2011)(same--applying the New Rule of Law in Watson v. U.S.,
552 U.S. 74 in an 18 USC § 924(c)(1) case.); U.S. v. Deboo,
2011 U.S. Dist. Lexis, 93878 (D.C.N.C. August 23, 2011)(same);
Key v. O'Brien, 2011 U.S. Dist. LEXIS 92418 (D.C. W.VA.

28

August 18, 2011)(same); McClain v. Owens, 2010 U.S. Dist.
LEXIS 33910 (D.S.C. March 8, 2010)(same); Hayden v. Rivera,
2009 U.S. Dist. LEXIS 93411 (M.D.N.C. Oct. 6, 2009)(Same--
applying 1651 to 21 USC 846 and 18 USC 924(c)(1) sentencing
issues relating to the Supreme Court's Watson v. U.S.
decision, supra); Neal v. Francis, 2009 U.S. Dist. LEXIS
85305 (M.D.N.C. Sept. 15, 2009)(same as Hayden v. Rivera,
supra); Fort v. Deboo, 2008 U.S. Dist. LEXIS 71505 (N.D.W.Va.
Sept. 19, 2008)(Same as Hayden v. Rivera, supra).

In Richter, supra, at 510 F.3d 103, 104 (2nd Cir.
2007) The Circuit Court there indicated that a writ of "Audita
Querela" might be deemed available if [its] existence were
necessary to avoid serious questions as to the constitutional
validity of both §§ 2255 and 2244, quoting, inter alia, In re
Dorsainvil, 119 F.3d 245, 248 (3rd Cir. 1997)("[W]here [sic]
no other avenue of judicial review available for a party who
claims that s/he is actually, factually, or legally innocent
as a previously unavailable statutory interpretation, we would
be faced with a constitutional issue.). In Richter, the
defendant had been convicted of 18 USC § 1959 [Conspiracy and
attempted murder in aid of racketeering and assault with a
dangerous weapon]. Richter sought Audita Querela in light of
U.S. v. Booker, 543 U.S. 220, 125 S.Ct. 738, 168 L.Ed.2d 621
(2005). However, in affirming the district court's decision
denying Audita Querela relief in [U.S. v. Richter, 2006 U.S.
Dist. LEXIS 21070 (E.D.N.Y. Mar. 10, 2006)], the Second
Circuit held that Booker, supra, was not retroactive--implying
it was available if it were. (citations omitted).

In Kessack v. U.S., The District for the Western

District of Washington granted Audita Querela Relief to
Kessack in A DRUG CASE.  Kessack and six others were convicted
in 1990, after a jury trial, of multiple counts including cons
piracy to distribute cocaine, money laundering, and possession
and distribution of cocaine in violation of 21 USC §§ 846 ad
841(a)(1).  Kessack received a 360 month sentence under the
then mandatory sentencing guidelines--remaining in custody
since September 10, 1989--but after all appeals were over,
Petitioner's codefendants sentences were all reduced to 120
months or less.  In sentencing Mr. Kessack under the then
mandatory Federal Sentencing Guidelines, the district court
found, by a preponderance of the evidence, that between 15 and
50 kilograms of cocaine were involved in the conspiracy,
resulting in a base offense level of 34; that a firearm was
possessed in the conspiracy, resulting in a two level increase
in the Guidelines calculation; and that Mr. Kessack was a
leader of a criminal activity involving five or more
participants, resulting in a 4-level increase in the
Guidelines calculation.  The court found Mr. Kessack's total
offense level to be 40.  With a Criminal Offense Level of II,
the Guidelines range was 324-405 months.  On June 22, 1990,
the court sentenced Mr. Kessack to 30 years in prison.  At the
time sentencing was imposed, the court was "narrowly
restricted" in exercising its discretion by the then-mandatory
Federal Sentencing Guidelines.  Without the Court's findings
of drug amounts, firearm possession, and leadership, the court
would have imposed a substantially lower sentence, BUT IN NO
EVENT LESS THAN THE STATUTORY MINIMUM OF TWENTY YEARS.
Notwithstanding, The Guidelines were mandatory and the Court

was required, by a preponderance of the evidence, to find the amount of drugs and other sentencing enhancements. However, the mandatory sentencing Guidelines used in the 1990 sentencing of Mr. Kessack were declared unconstitutional in Booker, supra, because the Sixth Amendment required juries, not judges, to find facts, relevant to sentencing. Kessack, supra. The Kessack Court held that:

"It follows that sentences imposed under an unconstitutional sentencing scheme should, in fairness, be reconsidered. Yet due to the rules of retroactivity [AND THE LIMITATION ON SUCCESSIVE HABEAS CORPUS CHALLENGES TO HIS CONVICTION] {for the reason that one must now seek permission to file a second and successive 28 USC § 2255 Petition--which could take years for a Circuit Court to grant such permission}, the U.S. Government argues that the pending Petition for a Writ of Audita Querela should be denied."

In overruling the Government's Motion, the Kessack Court noted that Petitioner Kessack had been denied relief on direct criminal appeal [unlike his codefendants], and all subsequent Habeas corpus or Post Conviction Constitutional and statutory challenges for sentencing reduction, had been denied by all the federal courts--numerous times. Kessack, supra, [Background]. Thus, the Kessack Court thought it appropriate to grant the Writ of Audita Querela on October 31, 2005 [14 years after his arrest and imprisonment] to correct a manifest miscarriage of justice. Nevertheless, the Kessack Court ordered Briefing on six issues: (1) The availability of the Writ of Audita Querela given the facts of this case; (2) Whether the Writ should be considered a challenge to the

conviction or sentence under 28 USC § 2255; (3) Whether the
Petition must be denied as a second or successive motion under
28 USC § 2255; (4) Whether Petitioner is foreclosed from
attempting to retroactively apply Booker to his case in light
of U.S. v. Cruz, 423 F.3d 1119 (9th Cir. 2005); (5) Whether
Petitioner has a substantive Fifth Amendment Due Process
Right to challenge his sentence and whether any such right
would be retroactive; and (6) Whether Petitioner is entitled
to be re-sentenced under 18 USC 3582(c)(2).

In responding, the U.S. Government made only two
arguments. They argued that: (1) Mr. Kessack's 28 USC 2255
was a second and successive Petition; and, (2) That the Writ
of Audita Querela was not available to Mr. Kessack because it
was unclear whether the Writ may be applied to address an
alleged sentencing error, as opposed to a conviction error,
citing Doe v. INS, supra.

The Kessack Court rejected the Government's argument
that the Writ of Audita Querela applies only to remedy errors
in a conviction, and not an error in a sentence. Indeed, the
Kessack Court expressly rejected the government's arguments
that 28 USC § 2255 was the exclusive remedy because the
Supreme Court had clearly held that the enactment of 28 USC §
2255 does not bar federal courts from considering common law
writs pursuant to 28 USC § 1651, citing U.S. v. Morgan, and
Carrington v. U.S., 503 F.3d 888 at 890 n. 2--893 (9th Cir.
2007); and Ejelonu, supra.

In justifying its decision in granting Audita Querela
Sentencing Relief, the Kessack Court relied upon such recent
cases as Kimbrough v. United States, 128 S.Ct. 558, 574, 169

32

L.Ed.2d 481 (Dec. 10, 2007), Booker, supra, Gall v. United States, 128 S.Ct. 586, 597-598, 169 L.Ed.2d 445 (Dec. 10, 2007); Rita v. United States, 127 S.Ct. 2456, 2469, 168 L.Ed.2d 203 (June 21, 2007). The Kessack Court recognized that both the Cruz and Carrington decisions above precluded such Audita Querela Relief as argued by the Government, but distinguished those cases from Kessack's in light of Recent Supreme Court developments and because Booker announced a new rule of constitutional law that was unforeseeable at the time of Kessack's sentencing.

After Kessack was decided, every Ninth Circuit Court of Appeals decision--and all other Circuit's had rejected Kessack' reasoning. But their precedential rulings HAVE NOW ALL BEEN OVERRULED by latter Supreme Court decisions granting Certiorari to resolve the conflict arising in the federal courts concerning 28 USC § 1651 remedies, inter alia, in PERSAUD v. U.S., 134 S.CT. 1023, 188 L.Ed.2d 117 (2014), reversing and remanding upon the Solicitor General's concessions as to errors of the federal courts denying relief under these remedies, 517 Fed. Appx. 137, 2013 U.S. App. LEXIS 6615 (4TH Cir. N.C. 2013), reversing and remanding, Persaud v. U.S., 2012 U.S. Dist. LEXIS 167250 (W.D.N.C. NOV. 26, 2012)(Denying a Petition seeking 28 USC 1651 relief); Dorsey v. U.S., et. al., 567 U.S. ___, 132 S.Ct.___, 183 L.Ed.2d 250 (June 21, 2012)(New Fair Sentencing Act of 2010 held Retroactive); Alleyne v. U.S., supra; Peugh v. United States, 569 U.S. ___, 133 S.Ct. ___, 186 L.Ed.2d 84 (June 10, 2013)(Ex Post Facto Law applied to sentencing guidelines).

The Second Circuit has ruled that 28 USC §§ 2241 &

2255 Remedies are inadequate and ineffective to test the
legality of fines, special assessments or restitution--
implying that these challeges must be raised through some
other remedy. See, Kaminski v. U.S., 339 F.3d 84 (2nd Cir.
2002), citing with approval, Smullen v. U.S., 94 F.3d 20, 25
(1st Cir. 1996)(challenge to restitution order not cognizable
under 28 USC §2255 EVEN IF PETITIONER imprisoned for same
offense)(emphasis, ours); U.S. v. Ross, 801 F.3d 374 (3rd Cir.
2015)(same); U.S. v. Campbell, 190 Fed. Appx. 227 (4th Cir.
July 20, 2006)(same); U.S. v. Hatten, 167 F.3d 884, 887 (5th
Cir. 1999)(same); U.S. v. Watroba, 56 F.3d 28, 29 (6th Cir.
1995)Barnickel v. U.S., 113 F.3d 704, 706 (7th Cir.
1997)(Coram nobis may be used to challenge restitution if
requirements of writ are met--BUT NOT §2255 OR §2241); U.S. v.
Bernard, 351 F.3d 360, 361 (8th Cir. 2003)(same); U.S. v.
Thiele, 314 F.3d 399, 401-402 (9th Cir. 2002)(same); U.S. v.
Henandez, 94 F.3d 606, 613 (10th Cir. 1996)(challenge to
conspiracy conviction not cognizable under 28 USC §2255
because defendant received no sentence other than $50 special
assessment under 18 USC §3013); Blaik v. U.S., 161 F.3d 1341,
1342 (11th Cir. 1998)(same as Hatten, supra).

    Petitioner believes that he is entitled to challenge
his special assessments, fines and/or restitution by 28 USC
1651.


    Coram Nobis or Coram Vobis:


Coram Nobis is an extraordinary writ, used only to review
errors of the most fundamental character. Hirabayashi v.

U.S., 828 F.2d 591, 604 (9th Cir. 1987). The United States
Supreme Court has held that district courts have the power to
issue the writ under the All Writs Act. 28 USC § 1651. U.S.
v. Morgan, supra, 346 U.S 502, at 506-07, 511-512; U.S. v.
Craig, 907 F.2d 653, 657 (7th Cir. 1990); U.S. v. Sawyer, 239
F.3d 31, 37, 51 n.4 (1st Cir. 2001).

        In Latin, "CORAM NOBIS" means "Before us".
Originally, this Petition for Relief was submitted in The
Court of the King's bench [or "Before Us"], in the sense of
being before the King. In contrast, the writ of CORAM VOBIS,
an analogous procedure, was brought before Judges of the Court
of Common Pleas, or "Before You". However some think "The
distinction between these terms are virtually meaningless in
the American context" for the reason that a federal or state
judge has the authority to grant both. See, M. Dian Duszak,
Note, Post McNally Review of Invalid convictions Through The
Writ of Coram Nobis, 58 Fordham L. Rev. 979, 981 n. 18 (1990).
 However, the Supreme Court's decisions clearly makes this
opinion wrong--just as The Sawyer's holding above, is clearly
wrong--for there is a distinction which can be made between
the two even in the federal courts, e.g., In re Nwanze, supra,
(Recognizing that if one Circuit Court of Appeals did not
follow the clear precedential authority of the U.S. Supreme
Court, another could grant a litigant relief if they were in
the personal jurisdiction of another circuit--hence implying
"Coram Nobis" and "Coram Vobis" were both available and
applicable.). Indeed, the Seventh Circuit has held that:
"The writ of Coram Nobis may be used to relitigate claims
fully aired at trial if the Petitioner shows (1) his

conviction has produced `lingering civil disabilities´ and (2)

the error is a type of defect that would have justified habeas

relief during imprisonment." See, U.S. v. Keane, 852 F.2d

199, 203 (7th Cir. 1988). Circuit Courts have adopted

different definitions of "civil disability." The Seventh

Circuit requires that: (1) "The civil disability cause a

present harm; (2) The disability arise out of the erroneous

conviction; and (3) The potential harm be more than

incidental." See, Howard v. U.S., 962 F.2d 651, 653-54 (7th

Cir. 1992).

To warrant Coram Nobis or Vobis relief, a Petitioner

must establish that: (1) "A more usual remedy is not

available"; (2) Valid reasons exist for not attacking the

conviction earlier"; (3) Adverse consequences exist from the

conviction sufficient to satisfy the case or controversy

requirement of Article III"; and (4) "The error is of a most

fundamental character". Hirabayashi, supra, at 604. Because

federal courts have held that "these requirements are

conjunctive, failure to meet any one of them is fatal." U.S.

v. McClelland, 941 F.2d 999 (9th Cir. 1991). Some courts ha

ve found that Coram Nobis was properly granted because

retroactive change in the law may jury instructions

inappropriate. U.S. v. Mandel, 862 F.2d 1067, 1075 (4th Cir.

1988); Allen v. U.S., 867 F.2d 969, 972 (6th Cir. 1989)(Writ

of Coram Nobis properly granted because Indictment and Jury

Instructions resulted in conviction based on impermissible

legal theory of liability.). In U.S. v. Barrett, 178 F.3d 34,

57 n. 20 (1st Cir. 1999)(Coram Nobis relief available when

Petitioner provides (1.) explanation of why relief not sought

36

earlier; (2) evidence that Petitioner continues to suffer collateral consequences from conviction; and (3) demonstration that error of "most fundamental" character.")   One Circuit has held that before Coram Vobis review may be granted the court must find: (1) That a more usual remedy is not available; (2) valid reasons existed for not attacking the conviction earlier; (3) adverse consequences of the conviction suffice to satisfy the case or controversy requirement of Article III of the U.S. Constitution; and (4) the error to be addressed is of a fundamental character.   U.S. v. McClelland, 941 F.2d 999, 1002 (9th Cir. 1991);  Fleming v. U.S., 146 F.3d 88, 90 (2nd Cir. 1998)(per curiam)(same).

Those courts [citing U.S. v. Morgan, supra], who have contended that one cannot be in federal custody in order to pursue relief via the Coram Nobis or Vobis remedy are clearly in error, because that is not what the Supreme Court said in Morgan, supra.  In U.S. v. Morgan, the Supreme Court held that Coram Nobis relief is available under certain circumstances to challenge the validity of a conviction EVEN THOUGH the defendant is no longer in custody and the sentence has been fully served.  At no time in the U.S. v. Morgan decision did the Supreme Court ever rule that Coram Nobis could not be used by any prisoner while they are still in prison.  Indeed, U.S. v. McClelland, supra, at 1002 found that this Petitioner could obtain Coram Nobis relief where a change in circuit law has retroactive application in the context of Coram Nobis pursuant to 28 USC § 1651.  Other courts have granted Coram Nobis relief to a person while they were still in prison.  Felker v. Turpin, 518 U.S. 651 135 L.Ed.2d 827, 116 S.Ct. 2333 (1996);

37

Blanton v. U.S., 94 F.3d 227 (6th Cir. 1996), citing Gareau v. U.S., 474 F.2d 24, 25 (6th Cir.)

In the Fourth Circuit, individuals may pursue both a writ of Coram Nobis and writ of Audita Querela--if they have completed their sentences.  See, Hanan v. U.S. 402 F.Supp.2d, 679 683 (E.D.Va. 2005), citing, U.S. v. Mandel, 862 F.2d 1067, 1076-79 (4th Cir. 1988)(Coram Nobis Relief properly granted because Retroactive change in law made jury instructions inappropriate), and citing McNally v. U.S., 483 U.S. 350 (1987).  Indeed, the Court upheld the use of Coram Nobis to vacate mail fraud convictions when an intervening Supreme Court decision resulted in a "dispositive change in federal law."  However, their reasoning that one must wait until he has completed his sentences and been released from prison, is inapposite to the Supreme Court's decision in U.S. v. Morgan. Indeed, why must one wait to correct a fundamental miscarriage of justice on a change in the law until after he has served the illegal and unjust sentence?   This suggests that one can receive the death penalty upon an improper indictment or jury instruction, be put to death by lethal injection upon the improperly informed juries verdict, then after they are dead and buried, send a Petition via their Advocate Jesus from Heaven to the unjust judge, then get some relief [1st John 4:1].

Surely the federal courts did not intend this unjust and bizarre interpretation of these ancient remedies, and the manifest miscarriage that would result in processing a citizenship request for relief.  Moreover, this would seem to run afoul of U.S. v. Tucor Int'l, 189 F.3d 834, 838 (9th Cir.

38

1999)(Writ of Coram Nobis properly granted after corporations
pled guilty to antitrust violations from which they were
clearly exempted by statute)--for the reason that they were
never in prison.

Audita Querela is certainly the proper remedy to
correct an unlawfully imposed and executed Sentencing Judgment
in a federal court.  See, U.S. v. Holland, 380 F.Supp.2d 1264
(N.D.Ala. July 8, 2008), citing, inter alia, U.S. v. Johnson,
983 F.2d 216 (11th Cir. 1993).  This is especially true when
defense counsel did not challenge the unlawful errors in the
Judgment at sentencing or on appeal, which was patently
obvious from a casual reading over the face of the Sentencing
Judgment--[Oral or Written and literally the same in the case,
sub judice]--which should have been done.  Id.  The district
court in "Holland" recognized that 28 USC § 1651 was an
appropriate remedy to use in challenging an incorrect Judgment
issued by the federal court, particularly when defense counsel
was ineffective in not noticing the errors, therein, citing
Massaro v. U.S., supra;  see also, Glover v. U.S., 531 U.S.
198, 203, 148 L.Ed.2d 604, 121 S.Ct. 696 (2001)('Any amount of
actual jail time has Sixth Amendment significance.").


WHY PETITIONER IS ENTITLED TO HIS COMBINED REMEDIES IN THE
CASE, SUB JUDICE:


Petitioner now brings this Petition for Audita
Querela, Prohibition, Mandamus, Bail without Surety, and for
other Extraordinary Relief for which he may be entitled
pursuant to 28 USC § 1651 ["The All Writs Act"] in light of

*39*

Persaud and McQuiggin, to raise Johnson, Alleyne, Rosemond, Peugh, Southern Union Co. v. U.S., and many Other challenges to this Honorable Court's unlawful exercise of subject matter and personal jurisdiction over both the convictions and sentences imposed--and as now executed.

Petitioner contends that the violations of law that occurred in these cases are similar to those occurring in his own case--particularly with respect to the indictments and jury instructions and interpretation of statutes--which are as unconstitutional as those occurring in Johnson, etc., supra.

### DUE PROCESS VIOLATIONS OF THE DISTRICT COURT:
#### Double Jeopardy Violations:

At the time of Petitioner's sentencing, The U.S. District Court was well aware that it could not sentence Petitioner to consecutive special assessments upon purely concurrent sentences pursuant to 18 USC § 3013.  See,  Ray v. U.S., 481 U.S. 736 (1987), reaffirmed by Rutledge v. U.S., 517 U.S. 292 (1996); U.S. v Maka, 237 Fed. Appx. 225 (9th Cir. 2007)(Multiplicitous offenses with consecutive special assessments would amount to double jeopardy requiring vacation of convictions and sentences--even when not imposed by the court); U.S. v. Jones, 489 F.3d 243, 250 (6th Cir. 2007)(same)("A district court's sentencing determination is reviewed under a deferential abuse-of-discretion standard for reasonableness, quoting Gall v. U.S., 552 U.S. 38, 46 (2007). Reasonableness has both procedural and substantive components. This is so because, When unlawful fines are unlawfully

imposed and FULLY EXECUTED CONSTITUTING A FUNDAMENTAL
MISCARRIAGE OF JUSTICE, what Remedy is Petitioner required to
use, and what Relief is Petitioner entitled to?

The Supreme Court, The Circuit Courts, and The
District Courts have ALL answered this issue in Petitioner's
favor:  Payment of the unlawfully imposed and unauthorized
fine constitutes Satisfaction of the Judgment as to the
Sentence--barring further imprisonment.   See, Ex parte Lange,
85 U.S. (18 Wall.) 163, 21 L.Ed.2d 872 (1873);   U.S. v.
Holmes, 822 F.2d 481, 496 at D. (5th Cir. 1987)("Payment of
the illegal fine and special assessment constituted
satisfaction of the judgment barring further imprisonment.")

As Smullen, et. al., clearly show, 28 USC 1651
Petitions for Audita Querela, Coram Nobis/Vobis, Mandamus, and
Prohibition are the only Remedies that may be used by the
court to prohibit the unlawful execution of a judgment imposed
and executed in violation of clearly established law.

THE AEDPA PROVISIONS AND PLRA of 18 USC §§ 1912-15:

The AEDPA provisions do not apply with respect to 28
USC §§ 1651 & 2241 Petitions.  See, Martin v. Bissonett, 118
F.3d 871, 847 (1st Cir. 1997); and, In re Nagy, 89 F.3d 115
(2nd Cir. 1996)(The PLRA and AEDPA do not apply to 28 USC 1651
Petitions.).  According to the above cases, the requirements
of the filing fees of the PLRA--or a Certificate of
Appealability under the AEDPA--do not apply to the filing of
28 USC § 1651 or 2241 Petitions or appeals, therefrom.
Moreover, where the defects of the judgment ripened after the
conclusion of the previous Petition, the later Petition based
on that defect may be non-successive.  See, Stewart v. U.S.,,

41

646 F.3d 856 (11th Cir. 2011); Chorney, 453 F. App'x. at 8.

In conclusion, CHORNEY's citation of JOHNSON V. UNITED STATES, 623 F.3d 41 (2nd Cir. August 23, 2010), and 293 Fed. Appx. 789, 790 (2nd Cir. 2008), and U.S. v. Johnson, 24 Fed. Appx. 70 (2nd Cir. 2001), requires that Petitioner be heard and given relief.

Petitioner Was Denied Effective Assistance of Counsel At All Stages of The Criminal Proceedings In The Case, Sub Judice:

Standard of Review.

The "standard of review" for Ineffective Assistance of Counsel has been set forth in Johnson v. Zerbst, 304 U.S. 458, 464 (1938)(Effective assistance of counsel is jurisdictional); Massaro v. U.S., 538 U.S. 500 (2003)(Effective assistance of counsel cannot be procedurally defaulted); U.S. v. Cotton, 535 U.S. 625, 631 (2002)(Subject matter jurisdiction can never be forfeited or waived; defects require correction regardless of whether error raised in district court); see also, U.S. v. Lo, 231 F.3d 471, 481 (9th Cir. 2000)(same); Glover v. U.S., 531 U.S. 198, 203 (2001)(Any amount of wrongfully imposed jail time has 6th Amendment Ineffective Assistance of Counsel significance); Murray v. Carrier, 477 U.S. 478, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986)(ineffective assistance of counsel may be established by even a single error of counsel); Evitts v. Lucey, 469 U.S. 387, 396 ((1985)Ineffective assistance of counsel on appeal is guaranteed as a matter or right--and

42

applies to both private and retained counsels);  U.S. v. Soto, 132 F.3d 56 (D.C.Cir. 1997)(Counsel is ineffective if he doesn't know the Sentencing Guidelines.);

One is entitled to an evidentiary hearing when he alleges ineffective assistance of counsel.  Harrelson, v. U.S., 967 F.Supp. 909 (N.D.Texas June 13, 1997)("Defense Counsel is the 'star witness' at any ineffective assistance of counsel claim hearing.").

Courts of appeals have not hesitated to conclude that an error resulting in an increase in the defendant's sentence affected the defendant's substantial rights.  (U.S. v. Anderson, 201 F.3d 1145, 1152 (9th Cir. 2000);  U.S. v. Martinez-Rios, 143 F.3d 662, 676 (2nd Cir. 1998)(finding clerical error that increased defendant's sentence by several months affected his substantial rights); glover v. U.S., supra;  U.S. v. Knight, 2001 U.S. App. LEXIS 19751, No. 99-5642 (3rd Cir. Sept. 6, 2001)(holding application of an incorrect sentencing guideline range affected substantial rights and was plain error even though sentence was also within correct range);  U.S. v. Jones, 235 F.3d 1231 (10th Cir. 2000);  U.S. v. Promise, 255 F.3d 150, 160-161 (4th Cir. 2001);  U.S. v. Whitt, 211 F.3d 1022, 1026 n. 10 (7th Cir. 2000), vacated and remanded, Whitt v. U.S., 148 L.Ed.2d 432, 121 S.Ct. 423, 200 U.S. LEXIS 7328 (2000).

Justice Frankfurter may not have been the first to observe that: "Wisdom too often never comes, and so one ought not to reject it merely because it comes too late," Henslee v. Union Planters Nat'l Bank & Trust Co., 335 U.S. 595, 600, 93 L.Ed. 259, 69 S.Ct. 290 (1949)--but he was surely right in so

declaring. Had he occasion, he might also have observed that sometimes belated wisdom does not arrive until a doctrinal shift removes the obstacles to its revelation, thereby exposing the unstable foundation to that which had been critically accepted before. Petitioner believes that his convictions and sentences to be such a case--for the reasons shown above.

Petitioner realleges and incorporates by reference the facts and grounds set forth in his Combined Petitions for Relief, herein. Furthermore, Petitioner may raise additional ineffective assistance of counsel claims, hereafter, once an evidentiary hearing is convened and defense counsel is interrogated as they become known. Notwithstanding, Petitioner also believes that defense counsel was ineffective in not raising violations of Petitioner's Fifth and Sixth Amendment rights as outlined in any and all of the above entitled cases, and the cases set forth in his attached Petition, which are realleged and incorporated by reference as if specifically set forth herein.

### CONCLUSION

This matter should go forward and Petitioner-Defendant granted relief for the reasons set forth in his Petition. Moreover, Petitioner should be granted Bail on his own recognizance without surety and with celerity pending the outcome of this matter for the reasons and law set forth in the Petition, heretofore.

44

Respectfully submitted,

*Raul Lopez 7-16-18*

RAUL CHRISTIAN LOPEZ-ARROYO

FED. REG. NO.# 14163-196

USP ATWATER

P.O. BOX 019001

ATWATER, CA.  95301.

PRO SE FOR PETITIONER-DEFENDANT

UNTIL FURTHER NOTICE TO THE COURT.


CERTIFICATE OF MAILING


I, RAUL CHRISTIAN LOPEZ-ARROYO, do hereby certify that I have mailed a copy of the above and foregoing documents by postage prepaid mail on this 16th day of July    2018, addressed to the following named individuals attorneys for the Respondents-Plaintiffs:


ANDRE´ MATEVOUSIAN, WARDEN,

USP ATWATER

P.O. BOX 019001

ATWATER, CA. 95301;


U.S. ATTORNEY'S OFFICE

405 WEST CONGRESS, SUITE 4800

TUCSON, ARIZONA. 85701.


Respectfully submitted,

45

RAUL CHRISTIAN LOPEZ-ARROYO

FED. REG. NO.# 14163-196

USP ATWATER

P.O. BOX 019001

ATWATER, CA. 95301.

PRO SE FOR PETITIONER-DEFENDANT

UNTIL FURTHER NOTICE TO THE COURT.